IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLACKAMAS COUNTY,            )
                             )
                             )
          Plaintiff,         ) Civil No. 04-627-JE
                             )
     v.                      ) OPINION AND ORDER
                             )
OREGON ADVOCACY CENTER,      )
                             )
          Defendant.         )
_____)

    Kimberley Ybarra-Cole
    Clackamas County Counsel
    2051 Kaen Road
    Oregon City, OR 97045-1819
        Attorney for Plaintiff

    Kathleen L. Wilde
    Stephen J. Mathieu
    Oregon Advocacy Center
    620 S.W. 5th Avenue, 5th Floor
    Portland, OR 97204
        Attorneys or Defendant

JELDERKS, Magistrate Judge:

    Clackamas County brought this action for declaratory judgment against Oregon Advocacy Center ("OAC"). OAC asserted

1 - OPINION AND ORDER

counterclaims.  The outcome turns on the interpretation of the
Protection and Advocacy for Individuals with Mental Illness
Act, 42 U.S.C. 10801 et seq. (2000) ("PAIMI").[1]  Both parties
move for summary judgment on all claims.

BACKGROUND

PAIMI provides federal funding for states to establish
independent Protection and Advocacy Systems ("PAS") to monitor
and protect the rights of the mentally ill.  Among other
things, PAIMI authorizes a PAS to "(A) investigate incidents
of abuse and neglect of individuals with mental illness if the
incidents are reported to the system or if there is probable
cause to believe that the incidents occurred; [and] "(B)
pursue administrative, legal, and other appropriate remedies
to ensure the protection of individuals with mental illness
who are receiving care or treatment in the State . . . , but
only with respect to matters which occur within 90 days after
the date of the discharge of such individual from a facility
providing care or treatment."  42 U.S.C. § 10805(a)(1).  When
investigating an alleged incident, PAS "shall . . . have
access to facilities in the State providing care or treatment"
and, under certain circumstances, access to certain patient
records.  See 42 U.S.C. § 10805(a)(3).

OAC is a non-profit legal center designated as the PAS
for Oregon, pursuant to PAIMI and ORS 192.517.  Clackamas

---

[1] The act was originally entitled the Protection and
Advocacy for Mentally Ill Individuals Act.  The language was
recently amended to change "mentally ill individuals" to
"individuals with mental illness."  Thus, the acronym PAIMI
will be used to reflect the current language.

2 - OPINION AND ORDER

County Mental Health ("CCMH") is a publicly funded mental health care program providing out-patient care to individuals with mental illness. CCMH itself does not provide any residential or overnight care or services.[2]

In late 2003 or early 2004, OAC received a complaint regarding the death of "Jane Doe," a thirteen year old girl who died while on runaway status in September 2003. Doe had been in the legal custody of the State of California, but the State of Oregon was supervising her residency with her grandmother in Oregon. Doe had visited CCMH for an initial mental health intake assessment in August 2003. Doe received no other services from CCMH.

Acting pursuant to its authority under PAIMI, OAC determined there was probable cause to investigate the complaint. OAC contacted CCMH to obtain all records related to Doe. CCMH refused to provide those records without the consent of Doe's legal representative or a court order. CCMH took the position that PAIMI did not apply to this situation because CCMH is not a "facility" within the meaning of PAIMI. CCMH also stated that it could be liable if it erroneously disclosed private patient records. OAC was not dissuaded. CCMH then commenced this action, seeking a declaration that it has no duty to provide those records to OAC.

While the case was pending, CCMH contacted Doe's biological mother, who signed a release. OAC was then

---

[2] In some circumstances, CCMH contracts with residential and overnight treatment facilities to provide this type of care to clients. This was not the case here.

3 - OPINION AND ORDER

provided access to all Doe's records with the exception of peer review reports. CCMH contends that PAIMI does not require disclosure of peer review reports. OAC disagrees.

Although OAC has now been given access to Doe's records, CCMH is still withholding access to the peer review reports. Accordingly, this case is not moot. Resolution of that issue will initially require the court to decide whether PAIMI's provisions granting a PAS access to certain records apply to the present circumstance.

## ANALYSIS

Summary judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The relevant facts are undisputed. The disagreement is one of statutory interpretation. Such questions of law are appropriate for summary judgment.

**A.  Is CCMH a "facility" within the meaning of PAIMI?**

OAC commenced its inquiry regarding Jane Doe pursuant to 42 U.S.C. § 10805(a)1)(A), which authorizes a PAS to "investigate incidents of abuse and neglect of individuals with mental illness . . . ."

Statutory construction begins with the text of the statute. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1041 (9th Cir. 2004). The words are given their ordinary meaning, unless Congress supplied its own definition of the words within the statute. Id.

Here, Congress specifically defined "abuse" and "neglect" for purposes of PAIMI. 42 U.S.C. § 10802 provides that:

> For purposes of this subchapter:
>
> (1) The term "abuse" means any act or failure to act <u>by an employee of a facility</u> rendering care or treatment which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to a[3] individual with mental illness, and includes acts such as--
>
>> (A) the rape or sexual assault of a individual with mental illness;
>>
>> (B) the striking of a individual with mental illness;
>>
>> (C) the use of excessive force when placing a individual with mental illness in bodily restraints; and
>>
>> (D) the use of bodily or chemical restraints on a individual with mental illness which is not in compliance with Federal and State laws and regulations.
>
> \* \* \* \* \*
>
> (5) The term "neglect" means a negligent act or omission by any individual <u>responsible for providing services in a facility</u> rendering care or treatment which caused or may have caused injury or death to a individual with mental illness or which placed a individual with mental illness at risk of injury or death, and includes an act or omission such as the failure to establish or carry out an appropriate individual program plan or treatment plan for a individual with mental illness, the failure to provide adequate nutrition, clothing, or health

---

[3] The statute repeatedly refers to "a individual" instead of "an individual."

5 - OPINION AND ORDER

>      care to a individual with mental illness, or
>      the failure to provide a safe environment for a
>      individual with mental illness, including the
>      failure to maintain adequate numbers of
>      appropriately trained staff.

(emphasis added).

As the emphasized language makes clear, for an incident to fall within the scope of the investigatory powers conferred on OAC by § 10805(a)(1)(A), the alleged abuse must have been at the hands of "an employee of a facility" or the alleged neglect must have been by an "individual responsible for providing services in a facility . . . ."

The requirement that there be a nexus to a "facility" also appears in other provisions implicated here. 42 U.S.C. § 10805(a)(3) mandates that a PAS "have access to facilities in the State providing care or treatment." Section 10805(a)(4) provides in relevant part that a PAS shall "in accordance with section 10806 of this title, have access to" certain records under circumstances where abuse or neglect is suspected, or a complaint has been received.

Congress then defined the term "records" as follows:

>     As used in this section, the term "records"
>     includes reports prepared by any staff <u>of a
>     facility</u> rendering care and treatment or reports
>     prepared by an agency charged with investigating
>     reports of incidents of abuse, neglect and injury
>     <u>occurring at such facility</u> that describe incidents
>     of abuse, neglect, and injury <u>occurring at such a
>     facility</u> and the steps taken to investigate such
>     incidents, and discharge planning records.

42 U.S.C. § 10806(b)(3)(A) (emphasis added).

Clackamas County contends that because CCMH furnishes only outpatient care, it is not a "facility" for purposes of PAIMI.

Congress has defined "facilities" for purposes of PAIMI:

> The term "facilities" may include, but need not be limited to, hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons.

42 U.S.C. § 10802(3) (2000).

Although the statutory definition does not explicitly exclude out-patient facilities, it lists only residential and in-patient facilities as examples. Notably, Congress did not use a more sweeping term, such as "any provider of mental health services," as might be expected if Congress had intended to include outpatient services within the ambit of this section.

In several other places within PAIMI, residential or in-patient care is implied. For example, PAIMI authorizes a PAS to "pursue administrative, legal, and other remedies on behalf of an individual" with mental illness, but "only with respect to matters which occur within 90 days after the date of the <u>discharge</u> of such individual <u>from a facility</u> providing care or treatment." 42 U.S.C. § 10805(a)(1)(c) (emphasis added). This, too, suggests that Congress envisioned in-patient facilities when crafting the law.

The Department of Health and Human Services ("HHS") has promulgated regulations that include definitions clarifying

the scope of PAIMI. The applicable regulation provides, in relevant part, that:

> Facility includes any public or private residential setting that provides overnight care accompanied by treatment services. Facilities include, but are not limited to the following: general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.

42 C.F.R. § 51.2.

This regulation is a reasonable interpretation of 42 U.S.C. § 10802(3), which refers only to residential settings that typically provide at least overnight care, if not longer. Like the statute, the examples given in the regulation are limited to residential and in-patient facilities. The agency's interpretation is reasonable and consistent with the statute and does not support OAC's position.

In 2000, Congress amended PAIMI's definition of individuals with mental illness to read:

> The term "individual with mental illness" means . . . an individual -
>
> (A) who has a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State; and
>
> * * *
>
> > (ii) who satisfies the requirements of subparagraph (A) <u>and lives in a community setting, including their own home</u>.

42 U.S.C. § 10802(4) (emphasis added).

OAC contends that the extension to individuals living in their own homes brings CCMH, and all out-patient facilities, within the PAIMI definition of facility. I disagree. While the amendment does expand the definition of "individuals with mental illness," what is absent is a change in the definition of "facilities." PAIMI does more than simply authorize the investigation of abuse and neglect by employees of facilities. PAIMI also charges a PAS with protecting, and advocating for, the rights of individuals with mental illness. Thus, it would not be irrational for Congress to make the definition of "individuals with mental illness" somewhat broader than the definition of "facilities." A PAS would not need access to individual patient records in order to advocate for legislation to better protect the rights of persons with mental illness, as an example.

Had Congress wanted to bring strictly out-patient services within the reach of PAIMI, it would have amended the definition of facilities to clearly reflect such an intention. That did not occur. Nor is there any indication in the legislative history that the 2000 amendments were intended to extend the definition of "facilities" to include out-patient treatment.

OAC has not cited, and the court has not found, any decisions supporting OAC's position. The cases applying PAIMI involve almost exclusively in-patient treatment. See Oregon Advocacy Center v. Mink, 322 F.3d 1101 (9th Cir. 2003) (applying PAIMI to the Oregon State Hospital); Protection & Advocacy for Persons with Disabilities v. Armstrong, 266 F.

9 - OPINION AND ORDER

Supp. 2d 303 (D. Conn. 2003) (prisons and jails); <u>Pennsylvania Protection & Advocacy v. Houstoun</u>, 228 F.3d 423 (3d Cir. 2000) (state hospital); <u>Center for Legal Advocacy v. Hammons</u>, 323 F.3d 1262 (10th Cir. 2003) (residential mental health institute).

The furthest the PAIMI definition of facility has been extended is to a transitional school that provided all day therapeutic treatment to severely emotionally disturbed children. <u>See</u> <u>State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Board of Education</u>, 355 F. Supp. 2d 649 (D. Conn. 2005). Therapeutic day treatment is easily distinguishable from an out-patient mental health assessment. In a day treatment situation, mental health professionals are responsible for providing care, nutrition, and the requisite number of staff, all of which the statute is concerned with. <u>See</u> 42 U.S.C. 10802(5). Strictly out-patient assessment, counseling and treatment does not encompass these issues.

CCMH did not become a "facility," as the term is used in PAIMI and the HHS regulations, by providing a one-time outpatient assessment to Jane Doe.

### B. **Disclosure of Peer Review Records**

Peer review reports were prepared evaluating the circumstances of Doe's assessment at CCMH and subsequent death. Generally, peer review committees are charged with identifying any mistakes, and proposed changes in policies or procedures. The committee then produces a report summarizing its findings.

Oregon law exempts peer review records from disclosure in certain situations. ORS 41.675 provides:

> (2) As used in subsection (3) of this section, "data" means all oral communications or written reports to a peer review body, and all notes or records created by or at the direction of a peer review body, including the communications, reports, notes or records created in the course of an investigation undertaken at the direction of a peer review body.
>
> (3) All data shall be privileged and shall not be admissible in evidence in any judicial, administrative, arbitration or mediation proceeding. This section shall not affect the admissibility in evidence of records dealing with a patient's care and treatment, other than data or information obtained through service on, or as an agent for, a peer review body.

42 U.S.C. 10805(a)(4) provides that a PAS shall, "in accordance with section 10806 of this title, have access to" certain records. Both the Third and Tenth circuits have held that PAIMI requires disclosure of peer review records, preempting any state law to the contrary. See Houstoun, 228 F.3d 423 (3th Cir. 2000); Hammons, 323 F.3d 1262 (10th Cir. 2003).

OAC urges this court to reach the same result. I have no occasion to decide that question. As earlier noted, the definition of "records" in § 10806(3)(A) requires a nexus with a "facility" as defined in § 10802(3). Because I have concluded that no such nexus was present here, it follows that § 10805(a)(4) does not compel Clackamas County to give OAC access to peer review records concerning Jane Doe.

### C. OAC's § 1983 Claim

Clackamas County did not violate PAIMI. The County therefore is entitled to summary judgment on this claim. Accordingly, I do not decide whether a violation of PAIMI is actionable under 42 U.S.C. § 1983, or whether OAC would be entitled to an award of attorney fees if it prevailed on such a claim.

## CONCLUSION

Oregon Advocacy Center's motion for summary judgment (#39) is denied. Clackamas County's motions for summary judgment (docket ## 30 and 35) are granted, to the extent stated in this opinion. Relief will be confined to deciding the specific matter before the court, and not the broader declaratory ruling that Clackamas County had requested. Clackamas County is not required to provide OAC with access to the peer review report concerning Jane Doe. All other issues are moot.

DATED this 3rd day January, 2006.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge